UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

TABITHA KILES, individually and as a representative of a Class of Participants and Beneficiaries of The Goodyear Tire & Rubber Company Health and Welfare Plan for Salaried Employees and The Goodyear Tire & Rubber Company Health and Welfare Plan for Hourly Employees,

Plaintiff,

v.

The Goodyear Tire & Rubber Company,

Defendant.

Case No.

## CLASS ACTION COMPLAINT

Tabitha Kiles ("Plaintiff") brings this Class Action Complaint against The Goodyear Tire & Rubber Company ("Goodyear" or "Defendant"), individually and on behalf of a Class of Participants and Beneficiaries of The Goodyear Tire & Rubber Company Health and Welfare Plan for Salaried Employees and The Goodyear Tire & Rubber Company Health and Welfare Plan for Hourly Employees ("Goodyear Health Plans" or "Plans"). Plaintiff makes the following allegations based upon personal knowledge as to her own actions and upon information and belief as to all other matters.

## NATURE OF ACTION

1. Goodyear was founded in 1898 and designs, manufactures, and sells tires for

1

passenger cars, trucks, SUVs, aircraft, heavy equipment, and related services (retreading, fleet services).

2. For Goodyear employees to maintain health insurance coverage under the Goodyear Health Plans, they must declare during an annual yearly benefit period whether they use nicotine products.

3. Those Goodyear employees who do use nicotine products are required to pay an additional fee ("nicotine surcharge") of $100 per month ($1200 per year) through the end of 2025. This nicotine surcharge was increased to $150 per month ($1800 per year) starting in 2026. The surcharge is per participant and beneficiary, so if both the employee and spouse indicate they are tobacco users, the surcharge would be $200 per month ($2,400 per year) through 2025 and $300 per month ($3,600) starting in 2026.

4. In 2020, 1619 Goodyear associates (salaried, commercial, and retail) paid the surcharge, while 430 Goodyear beneficiary spouses paid the surcharge, for a total annual surcharge amount of $2,458,800.

5. In 2021, 1,886 Goodyear associates (salaried, commercial, and retail) paid the surcharge, while 472 Goodyear beneficiary spouses paid the surcharge, for a total annual surcharge amount of $2,829,600.

6. In 2022, 2,007 Goodyear associates (salaried, commercial, and retail) paid the surcharge, while 420 Goodyear beneficiary spouses paid the surcharge, for a total annual surcharge amount of $2,912,400.

7. In 2023, 2,193 Goodyear associates (salaried, commercial, and retail) paid the surcharge, while 429 Goodyear beneficiary spouses paid the surcharge, for a total annual surcharge amount of $3,146,400.

8. In 2024, 2,229 Goodyear associates (salaried, commercial, and retail) paid the

surcharge, while 448 Goodyear beneficiary spouses paid the surcharge, for a total annual surcharge amount of $3,212,400.

9. In 2025, 1,985 Goodyear associates (salaried, commercial, and retail) paid the surcharge, while 398 Goodyear beneficiary spouses paid the surcharge, for a total annual surcharge amount of $2,859,600.

10. From 2020 to 2025, Goodyear associates and their beneficiary spouses paid $17,419,200 in nicotine surcharges.

11. Nicotine surcharges have proliferated in recent years. But to be legal, they must strictly comply with the terms of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 et seq., applied to medical plans by the Affordable Care Act (ACA), 124 Stat. 119, Public Law 111-148, and implementing regulations.

12. Goodyear's nicotine surcharge program, which applies identically to all salaried, commercial, and retail associates in all the Goodyear Health Plans, fails to comply the terms of ERISA and the ACA and their implementing regulations, and therefore, Goodyear collected these nicotine surcharges in violation of the law and in violation of its ERISA fiduciary duties to Goodyear Health Plans' participants and beneficiaries.

13. More specifically, ERISA's anti-discrimination provisions prohibit any medical plan from charging an extra premium or fee based on any health-status related factor, including nicotine use, unless that fee is part of a *bona fide* "wellness program." 29 U.S.C. § 1182(b)(1); 42 U.S.C. § 300gg-4(b)(1).

14. To qualify as a *bona fide* wellness program under ERISA, a company must offer a "reasonable alternative standard" (for example, a smoking cessation program), by which a participant can receive the program's "full reward;" that is, avoid the surcharge for the entire plan year (not just prospectively once the smoking cessation program has been completed).

3

15. More significantly here, in order to be a *bona fide* wellness program, a company must also provide *notice* that such a reasonable alternative exists for nicotine users in *every Plan communication* regarding the nicotine surcharge and must also give the Plan participants and beneficiaries the ability to receive a physician recommendation which exempts them from the nicotine surcharge.

16. At present, and over the last six (6) or more years, Goodyear Health Plans' participants and beneficiaries did not receive notice that such a reasonable alternative existed for nicotine users in *every* Plan communication regarding the nicotine surcharge and did not receive notice of their ability to receive a physician recommendation in *every* Plan communication which would have exempted them from the nicotine surcharge.

17. Because all elements of the wellness program safe-harbor must be met, the Goodyear nicotine surcharge program's lack of adequate notice of such a program violates ERISA's anti-discrimination requirements, and its collection by Goodyear was, and remains, unlawful.

18. Plaintiff brings this lawsuit individually and on behalf of a Class of Participants and Beneficiaries of the Goodyear Health Plans, seeking to have these unlawful nicotine surcharges returned, and for plan-wide relief under 29 U.S.C. § 1109 (ERISA § 409) and 29 U.S.C. § 1132(a)(2) (ERISA § 502(a)(2)), as well as appropriate, equitable relief under 29 U.S.C. § 1132(a)(3) (ERISA § 502(a)(3)).

## PARTIES

19. Plaintiff Tabitha Kiles resides in Lawton, Oklahoma, and is a resident of the State of Oklahoma. Goodyear hired Plaintiff Kiles on June 24, 2019 to work as a Tire Assembler at its facility in Lawton, Oklahoma. Plaintiff's employment with Goodyear ended on August 18, 2025.

20. Since at least 2019, Plaintiff Kiles has been a nicotine user. Plaintiff received health

insurance through Goodyear during her employment and signed up as a nicotine-user during open enrollment during all years of her employment at Goodyear.

21. Plaintiff Kiles was required, as a user of nicotine, to pay the illegal nicotine surcharge every year of employment to maintain her health insurance coverage.

22. During her over six years of employment at Goodyear, Plaintiff Kiles paid $7400 in unlawful nicotine surcharges.

23. Plaintiff Kiles does not recollect reading about or learning about a nicotine cessation program at Goodyear through any Plan notices or communications she received, and therefore did not know of the availability of a nicotine cessation program through Goodyear and her ability to receive a full rebate of those nicotine surcharges once she finished the cessation program.

24. Defendant Goodyear is headquartered at 200 Innovation Way Akron, Ohio 44316-0001, and has approximately 68,000 employees in the United States, including in Ohio. In this Complaint, "Goodyear" refers to the named Defendant and all parent, subsidiary, related, predecessor, and successor entities to which these allegations pertain.

25. At all times relevant to this lawsuit, Defendant operated the Goodyear Health Plans, which was available to Goodyear employees and their dependents.

26. The Goodyear Health Plans are employee welfare benefit plans subject to the provisions and statutory requirements of ERISA pursuant to 29 U.S.C. § 1003(a).

27. Plaintiff was a "participant" in the Goodyear Hourly Health Plan pursuant to 29 U.S.C. § 1102(7), during the relevant Class Period (January 9, 2020, to the time of judgment).

5

## JURISDICTION AND VENUE

28. This Court has subject matter jurisdiction in this ERISA matter under 28 U.S.C. § 1331 and pursuant to 29 U.S.C. § 1332(e)(1), which provides for federal jurisdiction of actions brought under Title I of ERISA, 29 U.S.C. § 1001 *et seq.*

29. This Court has personal jurisdiction over Defendant because it transacts business in this District, resides in this District, and has significant contacts with this District, and because ERISA provides for nationwide service of process.

30. Venue is appropriate in this District within the meaning of 29 U.S.C. §1132(e)(2) because some of the violations of ERISA occurred in this District and Defendant resides and may be found in this District.

## FACTUAL ALLEGATIONS

a. **Goodyear's Nicotine Surcharge Constitutes a *Prima Facie* Violation of ERISA's Anti-Discrimination Rule.**

31. As a baseline rule, and to broaden access to affordable health insurance coverage, the ACA amended ERISA to prohibit any health insurer or medical plan from discriminating against any participant in providing coverage or charging premiums based on a "health status-related factor," including the use of nicotine.

32. Pursuant to this rule, a plan "may *not* require any individual (as a condition of enrollment or continued enrollment under the plan) to pay a premium or contribution which is greater than such premium or contribution for a similarly situated individual enrolled in the plan on the basis of any health status-related factor in relation to the individual or to an individual enrolled under the plan as a dependent of the individual." 29 U.S.C. § 1182(b)(1) (emphasis added); 42 U.S.C. § 300gg-4(b)(1).

33. On its face, Goodyear's nicotine surcharge violates this provision.

34. Plaintiff and all others similarly situated employees were required to pay an

6

additional "premium or contribution" of $100 per month through 2025 based on a "health status-related factor," that being their use of nicotine products.

35. Specifically, at all times relevant to this lawsuit, pursuant to Goodyear Health Plans' rules, any employee who used any nicotine products were required to declare themselves to be nicotine users as part of the Goodyear annual benefits enrollment process.

36. As part of its nicotine surcharge, Goodyear requires its employees and their beneficiaries to complete a required "nicotine declaration" and self-report tobacco use when the open enrollment in their health insurance plan begins.

37. Goodyear associates, and their beneficiary spouses, who use nicotine products, pay an additional $100 a month or $1,200 annually through 2025 for being active nicotine users. That amount has increased to $150 a month or $1,800 annually starting in 2026.

38. The Goodyear Health Plans' Summary Plan Descriptions ("SPDs") during the Class Period do properly provide that: (1) "U.S. Goodyear associates and spouses enrolled in a company-sponsored medical plan can . . . access the Quit For Life program from the American Cancer Society at no cost. Visit: www.quitnow.net or call 1-866-QUIT-FOR-LIFE (1-866-784-8454) for more details;" (2) "to have the surcharge removed upon completion of the nicotine cessation program, review the Employee Assistance Program website at www.achievesolutions.net/goodyear and then call the Goodyear Associate Service Center at (844) 449-4772 to complete the Nicotine Declaration verbally. Your (or your spouse's) tobacco/nicotine user status will change to 'No.' Reimbursement will be retroactive to all surcharges imposed in the current Plan year;" and (3) "if, due to a medical condition or it is medically inadvisable for you to achieve the standards of this program, contact the Goodyear Associate Service Center at (844) 449-4772."

39. Each of these statements about the nicotine surcharge "reasonable alternative standard" must be in all Plan communication notices about the nicotine surcharge. These statements

only appear in the SPDs, and not in other Goodyear Health Plans' communications.

40. So, although Goodyear has set up a reasonable alternative standard for nicotine users to avoid the nicotine surcharge upon completion, Goodyear failed to provide the necessary, required notice of the details of its tobacco cessation program in all of its Goodyear Health Plans' communications about the nicotine surcharge program.

41. For instance, Goodyear has distributed a flyer entitled: "QUIT NICOTINE – And Avoid the Nicotine Surcharge." Yet, that notice does provide any information that (1) nicotine surcharge reimbursement will be retroactive to all surcharges imposed in the current Plan year, or (2) that if, due to a medical condition or it is medically inadvisable for you to achieve the standards of this program, they may be avoided by providing a physician recommendation.

42. Similar, Goodyear has distributed a flier every year from 2019 to 2025 entitled: "Benefits Built for the Road Ahead – [Year] Annual Enrollment," which discusses the nicotine surcharge program, but fails to provide information about all surcharges being retroactively reimbursed or that the surcharge can be avoided with a physician's recommendation.

43. There is no further explanation in these fliers of how the tobacco cessation program interacts with the tobacco surcharge, whether Plan participants receive a full rebate for the nicotine surcharge once they complete the tobacco cessation program, or the option to receive an exemption from their personal physician.

44. Goodyear is and has been required to make contributions to the Goodyear Health Plans to ensure that these Plans remain adequately funded. By collecting the nicotine surcharge, Goodyear has reduced the amount of its own contributions, thereby increasing Goodyear's profits.

45. At all times relevant to this lawsuit, Goodyear has maintained sole control of the nicotine surcharge program, including by determining which plan participants and beneficiaries are

required to pay the surcharge, withholding participants' funds from their paychecks to pay the surcharge, and determining which employees are reimbursed, if at all, for the nicotine surcharge.

### b. Goodyear Cannot Avail Itself of ERISA's Safe Harbor for Wellness Programs.

46. As an exception to its anti-discrimination rule, ERISA carves out protection for "programs of health promotion and disease prevention," also known as "wellness programs." 29 U.S.C. § 1182(b)(2)(B); 42 U.S.C. § 300gg-4(b)(2)(B).

47. But to qualify as a lawful wellness program, a plan must comply *with each of five statutory and regulatory requirements*. Those requirements concern (1) the frequency of the opportunity for a participant to qualify for the reward; (2) the size of the reward; (3) reasonable design of the program; (4) uniform availability and reasonable alternative standards; and (5) *notice of the availability of a reasonable alternative standard*. 29 C.F.R. § 2590.702(f).

48. These regulations "set forth criteria for an *affirmative defense* that can be used by plans and issuers in response to a claim that the plan or issuer discriminated under the [] nondiscrimination provisions." *See Incentives for Nondiscriminatory Wellness Programs in Group Health Plans*, 78 Fed. Reg. 33158, 33160 (June 3, 2013) (emphasis added).

49. Crucially, *every one* of the safe harbor requirements "must be satisfied in order for the plan or issuer to qualify for an exception to the prohibition on discrimination based on health status." *Id.*

50. Goodyear's nicotine surcharge program did not and does not, at least, satisfy the requirements that it provide notice of a reasonable alternative standard. As a result, it cannot meet each element of its affirmative defense.

51. Consequently, Goodyear is not entitled to safe harbor protection for operating a compliant wellness program and the assessment of the tobacco surcharge constitutes unlawful

9

discrimination based on a health status-related factor.

    **c.    Goodyear Failed to Provide Notice of Availability of a Reasonable Alternative Standard.**

52.    Additionally, to be deemed a lawful wellness program:

> **Notice of availability of reasonable alternative standard**. The plan or issuer *must* disclose *in all plan materials* describing the terms of an activity-only wellness program the availability of a reasonable alternative standard to qualify for the reward (and, if applicable, the possibility of waiver of the otherwise applicable standard), including contact information for obtaining a reasonable alternative standard *and a statement that recommendations of an individual's personal physician will be accommodated*. If plan materials merely mention that such a program is available, without describing its terms, this disclosure is not required. Sample language is provided in paragraph (f)(6) of this section, as well as in certain examples of this section.

29 C.F.R. § 2590.702(f)(3)(v), (f)(4)(v).

53.    While the Plan SPDs discussed above do provide some of the required information, crucially they do not make all the necessary disclosures as far as the nature of the award for completing the nicotine cessation program and as far as not have a "statement that recommendations of an individual's personal physician will be accommodated."

54.    Moreover, the Plans' non-SPD communications, which fall within the language of "all plan materials," are inconsistent with the sample language in paragraph (f)(6) of 29 C.F.R. § 2590.702, which states:

> Your health plan is committed to helping you achieve your best health. Rewards for participating in a wellness program are available to all employees. If you think you might be unable to meet a standard for a reward under this wellness program, you might qualify for an opportunity to earn the same reward by different means. Contact us at [insert contact information] and we will work with you (and, if you wish, with your doctor) to find a wellness program with the same reward that is right for you in light of your health status.

10

29 C.F.R. § 2590.702(f)(6). Much of this language, including the ability to "earn the same reward by different means" and the fact that the Goodyear Health Plans will "work with you . . . [and] with your doctor, is missing from the non-SPD Goodyear Health Plans' materials distributed to the Plans' participants.

55. "[A] plan disclosure that references a premium differential based on tobacco use . . . must include this disclosure." 78 Fed. Reg. 33158-01, 33166.

56. None of the non-SPD plan documents provided to Plaintiff in a written form or digitally on the computer disclose a means by which a participant could receive the "full reward" for the tobacco surcharge for the plan year, including by providing a statement that recommendations of an individual's personal physician regarding their nicotine use will be accommodated.

57. As a result, all of the Goodyear Health Plans' materials, as required by the wellness plan safe-harbor, do not provide the required notice of the scope and nature of the nicotine surcharge program available to Goodyear employees.

58. Because Goodyear has not complied with the requirement that it provide notice of the availability and scope of the reasonable alternative standard in *all of the Plans' communications* by which a Plan participant could avoid the tobacco surcharge (including through a recommendation by a personal physician), Goodyear's nicotine surcharge program is unlawful and the surcharge assessed to the Plaintiff and Class must be returned to them for the entire Class Period.

## CLASS ACTION ALLEGATIONS

59. 29 U.S.C. § 1132(a)(2) authorizes any participant or beneficiary of the Plan to bring an action individually on behalf of the Plan to enforce a breaching fiduciary's liability to the Plan under 29 U.S.C. § 1109(a).

60. 29 U.S.C. § 1132(a)(3) authorizes any participant or beneficiary of the Plan to bring an action for statutory violations of ERISA for "appropriate equitable relief."

61. In acting in this representative capacity, Plaintiff seeks to certify this action as a class action on behalf of all participants and beneficiaries of the Plan who were subject to the unlawful Goodyear nicotine surcharge. Plaintiff seeks to certify, and to be appointed as representatives of, the following Class:

> All persons in the United States who paid Goodyear's nicotine surcharge in connection with any of the Goodyear Health Plans at any time from six years prior to the filing of the Complaint to the present.

62. Excluded from the Class are the Court and its officers, employees and relatives; Goodyear and its subsidiaries, officers, directors, and the Plans' fiduciaries; and governmental entities.

63. The Class includes thousands of members and is so large that joinder of all its members is impracticable, pursuant to Federal Rule of Civil Procedure 23(a)(1).

64. There are questions of law and fact common to this Class pursuant to Federal Rule of Civil Procedure 23(a)(2), because Defendants owed fiduciary sand other duties to the Plan and its participants and failed to take the actions alleged as to the Plans and as to any individual participant. Common questions of law and fact include but are not limited to the following:

    a. Whether Goodyear's nicotine surcharge discriminates against plan participants based on a health status-related factor;

    b. Whether Goodyear's nicotine surcharge program qualifies for statutory safe harbor protection as a compliant wellness program;

    c. Whether Goodyear can meet every element of its statutory affirmative defense for operating a compliant wellness program;

    d. Whether all of Goodyear's Health Plans' materials describing the nicotine surcharge gave notice of a reasonable alternative standard by which a plan participant may receive the full reward; and

  e. Whether Goodyear, in its discretionary fiduciary capacity of managing the Goodyear Health Plans, breached its fiduciary duties with respect to its collection and retention of the nicotine surcharge.

65. Plaintiff's claims are typical of the claims of the pertinent class pursuant to Federal Rule of Civil Procedure 23(a)(3), because all class claims arise from the same course of conduct by Goodyear – its collection of an unlawful nicotine surcharge – and are based on the same legal theories.

66. Plaintiff will adequately represent the Class pursuant to Federal Rule of Civil Procedure 23(a)(4), because she was a participant in the Plan during the Class period, has no interest that conflict with the Class, is committed to the vigorous representation of the Class, and has engaged experienced and competent lawyers to represent the Class.

67. Certification is appropriate under Federal Rule of Civil Procedure 23(b)(1), because prosecution of separate actions for these breaches of fiduciary duties by individual participants and beneficiaries would create the risk of (1) inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendant concerning its discharge of fiduciary duties to the Plan and personal liability to the Plan under 29 U.S.C. § 1109(a), and (2) adjudications by individual participants and beneficiaries regarding these breaches of fiduciary duties and remedies for the Plan would, as a practical matter, be dispositive of the interests of the participants and beneficiaries who are not parties to the adjudication, or would substantially impair those participants' and beneficiaries' ability to protect their interests.

68. Certification is also appropriate under Federal Rule of Civil Procedure 23(b)(2) because Defendants have acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

69. Plaintiff's attorneys have substantial and varied experience in complex ERISA and class action litigation and will adequately represent the Class.

70. Plaintiff's claims arise from fiduciary breaches as to the Plan in its entirety and does not involve mismanagement of individual accounts.

71. The claims asserted on behalf of the Plans in this case fall outside the scope of any exhaustion language in the individual participants' Plan.

72. Exhaustion is intended to serve as an administrative procedure for participants and beneficiaries whose claims have been denied and not where a participant or beneficiary brings suit on behalf of a Plan for statutory violations and breaches of fiduciary duty.

73. Under ERISA, an individual "participant" or "beneficiary" is distinct from an ERISA Plan. A participant's obligation – such as a requirement to exhaust administrative remedies – does not, by itself, bind the Plan.

74. Moreover, any administrative appeal would be futile because the entity hearing the appeal (the Goodyear Health Plans Administrator) is the same Plan Administrator that made the decisions that are at issue in this lawsuit.

75. Policy supporting exhaustion of administrative remedies in certain circumstances – that the Court should review and where appropriate defer to a Plan administrator's decision – does not exist here because courts will not defer to Plan administrator's legal analysis and interpretation.

### FIRST CLAIM FOR RELIEF
### ERISA Statutory Violation – Unlawful Surcharge
### ERISA Section 502(a)(3)
### Failure to Give Required Notice

76. Plaintiff restates the above allegations as if fully set forth herein.

77. To enroll in the Goodyear Health Plans, Plaintiff and Class members were required to pay a nicotine surcharge in the amount of $1,200 per year through 2025. That amount increased to $1,800 per year in 2026.

78. Goodyear's nicotine surcharge program is not and was not a permissible wellness program, because Goodyear did not give the statutorily-required notice on the scope and nature of the reasonable alternative standard, in that none of the non-SPD plan documents provided to Plaintiff or Class members in a written form, or digitally on the computer, provided a means by which a participant could receive the full retroactive reward for the tobacco surcharge for the plan year, including by providing a statement that recommendations of an individual's personal physician regarding their nicotine use will be accommodated.

79. Goodyear therefore cannot meet every element of its affirmative defense for operating a lawful, compliant wellness program, and is therefore not entitled to statutory safe harbor protection.

80. Goodyear's nicotine surcharge has discriminated against, and continues to discriminate against, plan participants based on a health status-related factor and it is assessing premiums or contributions, in violation of 29 U.S.C. § 1182(b).

81. 29 U.S.C. § 1182(b) is a statutory provision of ERISA that Plaintiff and Class members may enforce pursuant to 29 U.S.C. § 1132(a)(3).

82. Plaintiff and Class members were required to pay an illegal surcharge, and Goodyear collected that fee from them in violation of the law. Equity requires that those funds be returned to Plaintiff and Class members.

83. Equity also requires that the Goodyear Health Plans be operated in conformance with the statutory safe-harbor for wellness programs.

## SECOND CLAIM FOR RELIEF
### ERISA Breach of Fiduciary Duty
### ERISA Section 502(a)(2)
### Breach of Duty of Loyalty

84. Plaintiff restates the above allegations as if fully set forth herein.

85. At all times relevant to this lawsuit, Goodyear was the administrator of the Goodyear Health Plans within the meaning of 29 U.S.C. § 1002(16) and was a fiduciary within the meaning of 29 U.S.C. § 1002(21)(A), in that it exercised discretionary authority and discretionary control respecting management of the Goodyear Health Plans and disposition of its assets by holding in trust the funds collected from the nicotine surcharge, and had discretionary authority and discretionary responsibility in the administration of the medical plan.

86. Goodyear breached its fiduciary duties by assessing and collecting the nicotine surcharge in violation of the law, as the receipt of additional funds reduced its own costs associated with funding the plan and forestalled its own obligations to make contributions thereto.

87. As a result of the imposition of the nicotine surcharge, Goodyear enriched itself at the expense of the Goodyear Health Plans, thereby receiving a windfall.

88. Goodyear breached its fiduciary duties under ERISA in that it failed to act solely in the interest of the participants and beneficiaries of the Goodyear Health Plans and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of plan administration, in violation of ERISA. *See* 29 U.S.C. § 1104(a)(1)(A).

89. As a result of these breaches, and pursuant to 29 U.S.C. § 1109, Goodyear is liable to make good to the plan all losses to the plan resulting from its breaches, disgorge all unjust enrichment and ill-gotten profits, and to restore to the plan and/or a constructive trust all profits it acquired through its violations alleged herein and which it made through use of assets of the plan, and for such other equitable or remedial relief as is proper.

90. Plaintiff is authorized to bring this action on behalf of the plan pursuant to 29 U.S.C. § 1132(a)(2).

**WHEREFORE**, Plaintiff requests the Court enter judgment, both individually and on behalf of all participants and beneficiaries in the Goodyear Health Plans, and award the following relief:

a. certifying a class action for Plaintiff's ERISA claims and appointing Walcheske & Luzi, LLC, Chirinos Law Firm PLLC, and Strauss Troy Co. LPA, as Class counsel;

b. requiring Goodyear to reimburse all participants who paid the nicotine surcharges from January 9, 2020, through the present plus interest;

c. requiring Goodyear to revise any nicotine surcharge program it intends to maintain to comply with ERISA § 702, 29 U.S.C. § 1182, and its implementing regulations;

d. enjoining Goodyear from collecting nicotine surcharges until Goodyear revises its tobacco surcharge program to comply with ERISA § 702, 29 U.S.C. § 1182, and its implementing regulations;

e. imposing a constructive trust on profits received by Goodyear as a result of fiduciary breaches committed by it or for which it is liable, upon which Plaintiff and members of the Class can make claims for benefits;

f. requiring Goodyear to disgorge all unjust enrichment or profits received as a result of fiduciary breaches committed by it with regard to the nicotine surcharge program for which it is liable;

g. ordering Goodyear to provide all accountings necessary to determine the amounts Goodyear must make good to the Goodyear Health Plans and to plan participants and beneficiaries;

h. imposing the equitable remedy of surcharge and requiring Goodyear to return all funds it derived from the illegal nicotine surcharge program;

i. awarding Plaintiff's counsel attorneys' fees and costs consistent with ERISA's fee and cost shifting provisions for the costs of prosecuting this action; and

j. any further relief that the Court may deem just and equitable.

Dated: January 9, 2026                    Respectfully submitted,

/s/ Robert R. Sparks
Robert R. Sparks (Ohio Bar No. 0073573)
Richard S. Wayne (Ohio Bar No. 22390)
STRAUSS TROY CO. LPA
Federal Reserve Building
150 E. 4th Street, 4th Floor
Cincinnati, OH 45202
Telephone: (513) 621-2120
rrsparks@strausstroy.com.com
rswayne@strausstroy.com

**WALCHESKE & LUZI, LLC**

Paul M. Secunda (admission *pro hac vice* pending)
235 N. Executive Dr., Suite 240
Brookfield, WI 53005
Telephone: (414) 828-2372
Fax: (262) 565-6469
psecunda@walcheskeluzi.com

**CHIRINOS LAW FIRM, PLLC**

Tulio D. Chirinos (admission *pro hac vice* pending)
20283 State Road 7, Suite 592
Boca Raton, FL 33498
Telephone: 561-299-6334
Email: tchirinos@chirinoslawfirm.com

*Attorneys for Plaintiff and Proposed Class*